STATE of Indiana, INDIANA STATE HIGHWAY COMMISSION, Appellant (Defendant Below),

v.

Eleanor Faye SPEIDEL, Leslie Kay Speidel and John J. Speidel, Jr., Appellees (Plaintiffs Below).

No. 2–877A300.

Court of Appeals of Indiana, Second District.

July 24, 1979.

Theodore L. Sendak, Atty. Gen., Susan J. Davis, Deputy Atty. Gen., Indianapolis, for appellant.

Howard S. Young, Jr., Richard A. Young, Young & Young, Indianapolis, for appellees.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Defendant-Appellant, State of Indiana, Indiana State Highway Commission (the State), appeals from a partial summary judgment in favor of Plaintiff-Appellees, Eleanor Speidel, Leslie Speidel, and John Speidel, Jr. (the Speidel children) on the issue of liability, claiming that the former adjudication of liability in a wrongful death action is not binding in the present action by the Speidel children for their personal injuries, i. e., that collateral estoppel may not be asserted against the State.

We reverse.

### FACTS

The undisputed facts may be briefly summarized as follows:

On October 12, 1970, at approximately 5:00 p. m., Wilma Speidel was involved in an automobile collision with a pick-up truck while she was driving along State Road 37 five miles north of Martinsville in Morgan County, Indiana. Wilma Speidel was fatally injured in the accident and her three children, Eleanor, Leslie and John Speidel, Jr., who were passengers in her car at the time of the collision, were injured.

In 1972, John Speidel filed a 2-count complaint in Marion Superior Court. The first count was in his individual capacity for medical expenses incurred by him on behalf of his three minor children (ages 5 years, 3 years, and 9 months at the time of the accident) and for damages for the loss of their services. The second count was brought under the Indiana Wrongful Death statute to recover damages for Wilma Speidel's wrongful death. He alleged that the State was negligent in the design, construction, and maintenance of State Road 37 and that such negligence was the proximate cause of the accident. The jury rendered a verdict for John Speidel in the amount of Two Hundred Ninety-four Thousand ($294,-000) Dollars, and judgment was entered on March 1, 1977. The judgment was appealed, the Court of Appeals affirmed, and transfer was denied by the Indiana Supreme Court on February 21, 1978.

Before that process was completed, the Speidel children filed a complaint against the State on February 13, 1974, alleging carelessness and negligence in design, construction and maintenance of State Road 37 and sought damages for their personal injuries. On January 28, 1977, they sought a partial summary judgment on the issue of liability claiming that the issue of liability had already been determined in the earlier wrongful death action and that it was binding on the State in the present personal injury action.

The trial court granted the motion and the State brings this appeal.

### ISSUE

A single issue is presented for review: Is the finding of liability in the wrongful death action binding on the State in the present personal injury action?

*PARTIES' CONTENTIONS*—The State, as appellant, maintains that collateral estoppel is unavailable because the essential ele-

ments of mutuality of estoppel and privity are absent.

The Speidel children assert collateral estoppel against the State claiming that the finding of liability in the prior wrongful death action is binding in the present personal injury action because the actions arose out of the same occurrence and the actions have the same defendant and the same plaintiffs or persons in privity with the prior plaintiff. Also, it is argued that a "fundamental fairness" test should be applied on a case by case basis as has been done in some other jurisdictions.

### ·DECISION

*CONCLUSION*—Mutuality of estoppel, an essential element of collateral estoppel, is lacking so the former adjudication of the State's liability is not binding in the present action.

By successfully asserting collateral estoppel against the State in the trial court, the Speidel children compel us to enter the miasmic land of res judicata where historic marsh vapors obscure concepts and semantic footing ·is slippery.

 Despite these uncertainties, none can deny that generally speaking res judicata, unlike Gaul, is divided into two parts. The first part may best be described as "claim preclusion," [1] a term which is applied to a prior adjudication resulting in a final judgment on the merits rendered by a court of competent jurisdiction which acts as a complete bar to a subsequent action on the same claim between the same parties or those in privity with them. *Town of Flora v. Indiana Service Corp.* (1943), 222 Ind. 253, 53 N.E.2d 161; *In re Estate of Nye* (1973), 157 Ind.App. 236, 299 N.E.2d 854; *Amann v. Tankersley* (1971), 149 Ind.App. 501, 273 N.E.2d 772; *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448.

---

1. Vestal, *Rationale of Preclusion*, 9 St. Louis · U.L.J. 29 (1964). Claim preclusion appears to be a more accurate term than "estoppel by judgment"—the term which has previously

been used by the Indiana Courts. *See Town of Flora v. Indiana Service Corp.* (1943), 222 Ind. 253, 53 N.E.2d 161.

■ The second part of res judicata is commonly referred to as "issue preclusion"[2] or collateral estoppel. This principle finds application when a particular issue is adjudicated and then is put into issue in a subsequent suit on a different cause of action between the same parties or those in privity with them. When this happens the former adjudication of the issue is held to bind the parties or privies of the subsequent suit. *See Town of Flora v. Indiana Service Corp., supra; In re Estate of Nye, supra; Mayhew v. Deister, supra. See also* Restatement (Second) of Judgments § 68 (Tent. Draft No. 1, 1973).

■ As to claim preclusion, a party is not allowed to split a cause of action, pursuing it in a piecemeal fashion and subjecting a defendant to needless multiple suits. *Roby v. Eggers* (1891), 130 Ind. 415, 29 N.E. 365; *Evansville Legion Home Association v. White* (1967), 141 Ind.App. 574, 230 N.E.2d 623. However, two (or more) separate causes of action may arise from the same tortious act, and in such case a judgment on one action does not bar suit on the second.[3] *Illinois Central Gulf RR v. Parks* (1979), Ind.App., 390 N.E.2d 1078 (No. 1–678–A–180, handed down June 25, 1979); *Nichols v. Yater* (1970), 147 Ind.App. 29, 258 N.E.2d 66; *Fairwood Bluffs Conservancy Dist. v. Imel* (1970), 146 Ind.App. 352, 255 N.E.2d 674; 50 C.J.S. *Judgments* § 677.

■ In determining whether only a single cause of action exists, the test is whether identical evidence will support the issues involved in both actions. *Fairwood Bluffs Conservancy Dist. v. Imel, supra; Burrell v. Jean* (1925), 196 Ind. 187, 146 N.E. 754.

■ The Speidel children now sue the State on a different cause of action (their personal injuries) than was asserted in the previous action (wrongful death of their mother). *See Chamberlain v. Mo.-Ark. Coach Lines, Inc.* (1945), 354 Mo. 461, 189 S.W.2d 538; *Cincinnati, Hamilton and Dayton R.R. v. Chester* (1877), 57 Ind. 297. While both claims arose from the same incident, each required proof of injury and damages that the other did not require. *See Illinois Central Gulf RR v. Parks, supra; Nichols v. Yater, supra.* Thus there is no claim preclusion; the judgment on the first action did not preclude the second suit on a separate cause of action.

Our inquiry now turns to the nature of collateral estoppel or the "issue preclusion" branch of res judicata.

■ We have not far to look to find a line of Indiana Supreme Court cases which define the two requirements necessary to the application of collateral estoppel. Over 100 years ago it was decided that in order for collateral estoppel to apply so that the former judgment was binding as to the issue subsequently raised, there must be *identity of parties and mutuality of estoppel* :

The proceedings in the partition suit do not in any manner estop the plaintiff, on the ground of being a former adjudication of the same matter. Without stopping to inquire, especially, whether the same matter was adjudicated, it is sufficient to say that that suit was between different parties. *Judgments bind only parties and privies, and the estoppel must be reciprocal.* (emphasis added) *Dayton v. Fisher* (1870), 34 Ind. 356, 358.

Since this pronouncement, identity of parties and mutuality of estoppel have become mandatory prerequisites to a successful plea of collateral estoppel in both this and the Supreme Court. *See, e. g., Tobin v. McClel-*

2. Vestal, *Rationale of Preclusion*, 9 St. Louis U.L.J. 29 (1964). *See also* Restatement (Second) of Judgments § 68 (Tent. Draft No. 1, 1973). This branch of res judicata has also been referred to as "estoppel by verdict." *See Town of Flora v. Indiana Service Corp., supra.*

3. In passing we comment that had the State possessed any claim against the plaintiffs arising from the same transaction, the State would have been *required* by T.R. 13(A) to raise that cause of action as a counterclaim in the initial suit. However, the Trial Rules impose no corresponding duty upon the plaintiff to assert all of his causes of action arising from the same transaction in a single suit. *See Illinois Central Gulf RR v. Parks, supra; Nichols v. Yater, supra.*

lan (1947), 225 Ind. 335, 73 N.E.2d 679; *Hoosier Stone Co. v. Louisville, New Albany and Chicago Railway Co.* (1891), 131 Ind. 575, 31 N.E. 365; *Maple v. Beach* (1873), 43 Ind. 51; *Dayton v. Fisher, supra. See also Lukacs v. Kluessner* (1972), 154 Ind.App. 452, 290 N.E.2d 125; *Amann v. Tankersley, supra* ; *Mayhew v. Deister, supra.*

### A. *Identity of Parties.*

■ A plea of collateral estoppel is binding only on parties to the action and persons in privity with them.[4]

Indiana's Wrongful Death Statute, Ind. Code 34–1–1–2 (1976) provides in part:

> When the death of one is caused by the wrongful act or omission of another, *the personal representative* of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission . . . That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. *The remainder of the damages*, if any, *shall*, subject to the provisions of this act, *inure to the* exclusive *benefit of the* widow or *widower*, as the case may be, *and to the dependent children*, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased. (emphasis added)

The personal representative is the proper person to institute a wrongful death action. In fulfilling this statutory duty, the personal representative is not acting as administrator for the estate, but as trustee for those persons who are entitled by statute to recover pecuniary losses sustained as a result of the wrongful death. *Bradshaw v. Moyers* (S.D.Ind.1957), 152 F.Supp. 249; *Pettibone v. Moore* (1945), 223 Ind. 232, 59 N.E.2d 114. That is, in a wrongful death action, the personal representative is a nominal party and the beneficiaries for whose benefit the action is maintained, are the real parties in interest.

■ In determining the parties for res judicata purposes, this court looks beyond the nominal parties and treats those whose interests are involved as the real parties. *See Tobin v. McClellan, supra* ; *Smith v. Midwest Mutual Ins. Co.* (1973), 154 Ind. App. 259, 289 N.E.2d 788; *Mayhew v. Deister, supra.* As stated in Bigelow on Estoppel 145 (6th ed. 1913): "Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different; and parties nominally different may be, in legal effect, the same."

Here, the Speidel children were the real parties in interest in the earlier suit. The action was brought for their benefit under the Indiana Wrongful Death Statute. The father served in a dual capacity both as a real party (in his role of beneficiary) and a nominal party (in his role of personal representative).

■ When a suit is brought for the benefit of another, it is the beneficial owner who is the real party in interest and who is bound by the judgment. 50 C.J.S. *Judgments* §§ 771–772 and cases cited therein.

■ While we conclude that the preferable view is that the Speidel children were bound by the prior judgment as real parties in interest, we recognize there is contrary authority, that is, that the Speidel children were in privity with their personal representative (their father).[5] But whether the

---

4. Other courts have abandoned the identity of parties requirement for collateral estoppel, *see Bernhard v. Bank of American Nat. Trust & Savings Assn.* (1942), 19 Cal.2d 807, 122 P.2d 892. The requirement was recently abandoned in Federal courts by two recent U. S. Supreme Court decisions, *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552, and *Blonder-Tongue Laboratories, Inc. v.*

*University of Illinois Foundation* (1971), 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788. However, any abandonment of the identity of parties requirement in Indiana must come from our Supreme Court.

5. A "privy" has traditionally been defined as one who, after commencement of the action, acquires an interest in the subject matter of a

Speidel children were the real parties in interest or privies in the original action, the identity of parties requirement of collateral estoppel (issue preclusion) has been satisfied.

### B. *Mutuality of Estoppel.*

The Speidel children are not as fortunate in asserting the requirement of mutuality of estoppel.[6]

 Estoppel is mutual if the one taking advantage of the prior adjudication would have been subsequently bound had the prior judgment gone the other way. *Tobin v. McClellan, supra* ; *Mayhew v. Deister, supra* ; *Amann v. Tankersley, supra.* Differently stated, estoppel is mutual if both litigants are concluded by the judgment, and otherwise it binds neither in subsequent litigation. *See* 31 A.L.R.3d 1044, 1060 (1970); Freeman, The Law of Judgments § 428 (5th ed. 1925). 46 Am.Jur.2d *Judgments* § 521 (1969).

The requirements of mutuality and identity of parties are closely related and in most factual settings are co-extensive. For the most part, one who is a party or privy to a former adjudication is subsequently bound by the judgment rendered therein. However, to the extent that the two requirements are divergent, mutuality of estoppel is broader. Thus, when one is a party or privy to prior litigation, but would not have been bound if the judgment had been to the contrary, then a plea of collateral estoppel is precluded in the second action due to the absence of mutuality. 1B Moore's Federal Practice ¶ 0.412[1] at 1801 (1974); 31 A.L.R.3d at 1060 (1970); Moore and Currier, *Mutuality and Conclusiveness of Judgments*, 35 Tulane L.Rev. 301 (1961).

Implicit in the jury's verdict in the first action were the conclusions that the State was guilty of negligence, such negligence was the proximate cause of the wrongful death, and that Wilma Speidel was not guilty of contributory negligence. To determine then if the estoppel is mutual, the prior judgment must be examined to ascertain whether the Speidel children would have been bound by the prior judgment had it gone against them.

 Had the jury concluded in the first action that the State was not negligent in its maintenance of the highway, such a finding would have precluded recovery by the Speidel children in the second

judgment through or under one of the parties as by inheritance, succession, or purchase. *See Tobin v. McClellan, supra* ; *Guthrie v. Blakeley* (1955), 127 Ind.App. 119, 130 N.E.2d 62; *Bailey v. Beekman* (1977), Ind.App., 362 N.E.2d 1171; *Smith v. Midwest Insurance Co.* (1972), 154 Ind.App. 259, 289 N.E.2d 788. But Judge White in *In re Estate of Nye, supra,* expanded this definition by the adoption of the Restatement of Judgments, § 83. Comment a to that section reads in pertinent part:

Comment:
 a. Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action, but who are connected with it in their interests, are affected by the judgment with reference to interests involved in the action, as if they were parties. The word "privy" includes . . .; *those whose interests are represented by a party to the action* . .. .; (emphasis added)

This concept of privity is more precisely stated in Restatement (Second) of Judgments § 85 (Tent. Draft No. 2 1975), a portion of which provides:

 (1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of the rules of res judicata as though he were a party. A person is represented by a party who is:

 (a) The trustee of an estate or interest of which the person is a beneficiary; or

 (c) The executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary;

Thus, according to this view, if a party acts in a representative capacity, those persons whom he represents are in privity with him.

**6.** Despite the general rule that collateral estoppel is available only to parties to the prior action and their privies and that estoppel must be mutual, there exists a generally recognized exception when the liability of the defendant is dependent on or derived from one who is exonerated in a prior adjudication brought by the same plaintiff. 1B Moore's Federal Practice ¶ 0.412[3] (1974). 46 Am.Jur.2d, § 522 (1969). See also *Restatement of Judgments* § 94–111 (1942).

action. On the other hand, had the jury found that the State was negligent, but that Wilma Speidel was contributorily negligent, recovery in the first action would have been precluded. However, this judgment would *not* have bound the Speidel children in their subsequent personal injury action for two reasons: (1) The Speidel children were *non sui juris* due to their ages and thus incapable of contributory negligence as a matter of law; *Mann v. Anderson* (7th Cir., 1971), 447 F.2d 533 (applying Indiana law); *Bottorff v. South Construction Co.* (1916), 184 Ind. 221, 110 N.E. 977; *Meineke v. Hollowell* (1964), 136 Ind.App. 324, 200 N.E.2d 541; *Fuller v. Thrun* (1941), 109 Ind.App. 407, 31 N.E.2d 670; *Terre Haute, etc., Traction Co. v. Stevenson* (1919), 73 Ind.App. 294, 126 N.E. 34. (2) Under Indiana law, the contributory negligence of a driver cannot be imputed to a passenger if the passenger is passive, exercising no control over the driver, *Leuck v. Goetz* (1972), 151 Ind.App. 528, 280 N.E.2d 847; *New York Central R.R. Co. v. Sarich* (1962), 133 Ind.App. 516, 180 N.E.2d 388; or when the driver and passenger are not shown to be engaged in a joint enterprise.[7] *Beem v. Steel* (1967), 140 Ind.App. 512, 224 N.E.2d 61; *Baltimore & O. R. Co. v. Patrick* (1960), 131 Ind.App. 105, 166 N.E. 654; *Vance v. Wells* (1959), 129 Ind.App. 659, 159 N.E.2d 586. The record is devoid of any evidence of joint control exercised by the Speidel children.

We can only conclude, therefore, the essential element of mutuality of estoppel is absent.

Although a majority of jurisdictions recognize and apply the doctrine of mutuality of estoppel,[8] the Speidel children urge us to adopt the modern trend which discards mutuality in certain cases and restricts the identity of parties requirement to the person against whom the collateral estoppel is being invoked. *See* 31 A.L.R.3d 1044, 1052 (1970). The philosophy underlying this case by case approach, which is characterized by the children as "fundamental fairness," is that a party is entitled to his day in court on a particular issue rather than his day in court against a particular adversary. Some courts[9] have further reasoned that traditional principles must give way to common logic and today's realities of overburdened court calendars. While this approach was recently adopted by the U. S. Supreme Court for use in Federal Courts, *Parklane Hosiery Co. v. Shore, supra* n. 4 (offensive use of collateral estoppel); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra* n. 4 (defensive use of collateral estoppel), it is not binding on state courts.

This newer approach considers various factors in determining whether a plea of collateral estoppel will be given effect; the most pertinent factors include whether collateral estoppel is being used offensively or defensively,[10] whether the person adversely

7. To establish a joint enterprise there must be evidence showing the existence of joint control over management and operation of the vehicle and over the course and conduct of the trip. There must also be evidence of community interest of a pecuniary nature in the object and purpose of the undertaking, with equal right to govern movements and the conduct of each other. Finally, there must be an express or implied contract encompassing all of these elements. *Serna v. Kiger* (1978), Ind.App., 372 N.E.2d 1232; *Ackman v. Bullard* (1974), 161 Ind.App. 437, 316 N.E.2d 444; *Keck v. Pozorski* (1963), 135 Ind.App. 192, 191 N.E.2d 325.

8. 1B Moore's Federal Practice ¶ 0.412 (1974).

9. *See, e. g., Provident Tradesman B & T Co. v. Lumberman's Mutual Casualty Co.* (3rd Cir., 1969), 411 F.2d 88; *Gliedman v. Capital Airlines, Inc.* (D.C.Md.1967), 267 F.Supp. 298.

10. The terms "offensive" and "defensive" use of collateral estoppel are defined in 31 A.L.R.3d 1044, 1048–49 (1970) as follows:

The phrase "defensive use" of the doctrine of collateral estoppel means that a stranger to the judgment, ordinarily the defendant in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense. On the other hand, the phrase "offensive use" or "affirmative use" of the doctrine means that a stranger to the judgment, ordinarily the plaintiff in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an essential element of his cause of action or claim. In other words, defensively a judgment is used as a "shield," and offensively as a "sword."

affected by the plea of collateral estoppel had a full and fair opportunity to litigate the relevant issue effectively, and whether assertion of a plea of collateral estoppel by a stranger would create unfair results. Weight has also been given to whether the former judgment was vigorously prosecuted, whether the issue is one of fact or of law, and whether the defendant had notice of the plurality of plaintiffs. *See* 31 A.L. R.3d 1044, 1053–54.

These factors, however, have been utilized in the factual setting in which *a stranger* asserts collateral estoppel either to protect himself (defensive use) or to bind the opposing party to a previous judgment (offensive use). This is because generally the elimination of the mutuality requirement is advocated when *a stranger* to the prior judgment attempts to invoke collateral estoppel either offensively or defensively. It should be emphasized, however, that the factual setting of this case is atypical—not only was the issue of negligence litigated previously, *it was litigated between essentially the same persons.* Thus, there arises the rare factual setting previously alluded to in which the mutuality requirement is broader than the identity of parties element, i. e., privity exists but mutuality does not. It is in this *narrow* setting that the abolition of mutuality as an element of collateral estoppel would seem appropriate.

But here we should pause to analyze the broad policies underlying judicial finality:

1. protection of litigants against the harassment of litigating the same cause against the same party or his privy.
2. protection of the public interest in minimizing litigation.

1B Moore's Federal Practice ¶ 0.412(1) at 1809 (1974).

Supporters of the traditional view, including the Indiana Supreme Court, believe these policies are not served by permitting a plea of collateral estoppel by a stranger to the prior judgment . . . the rationale being that the stranger to the litigation is not seeking to be protected from repeated litigation but is attempting to avoid litigation altogether. And the party to the prior litigation has yet a further opportunity to avoid liability. Proponents of mutuality also urge that litigation will increase rather than decrease because each defending litigant will pursue each claim to the utmost in an attempt to avoid an adverse judgment which might be binding in unforeseen future actions.

These contentions have arguable validity if the absence of mutuality is a direct result of a relaxation of the identity of parties element of collateral estoppel. Under the present facts, however, we are not dealing with strangers to the prior judgment. So the question might well be asked. Should the State be allowed to take another fling at avoiding liability by asserting the lack of mutuality when the issue of liability has been fully litigated previously by essentially the same parties?

It appears reasonable to answer this question in the negative and require only privity in order to assert collateral estoppel on these particular facts, but to do so would obliterate prior Supreme Court cases unequivocally stating a plea of former adjudication is available only when there is privity *and* mutuality of estoppel. *See, e. g., Dayton v. Fisher, supra* ("Judgments bind only parties and privies, and the estoppel must be reciprocal."); *Hoosier Stone Co. v. Louisville, New Albany and Chicago Railroad Co., supra* ("Judgments ordinarily bind only parties and privies, and the effect of the judgment must be reciprocal or there is no estoppel."); *Maple v. Beach, supra* ("Another principle which governs in the admissibility and effect of judgments as evidence is that the binding force and effect of the judgment must be mutual."); *Tobin v. McClellan, supra* ("The general rule is that the plea of former adjudication is available only when there is privity and mutuality of estoppel.").

While the spirit of the Trial Rules is to encourage litigating all issues between the parties it is not mandatory that this be done as to a plaintiff with more than one cause of action. So the Indiana Supreme Court cases insisting on both privity and mutuality would seem to have vitality, even though they were decided prior to the adoption of the present Trial Rules in 1971.

We thus have no alternative but to reverse the trial court's summary judgment on the issue of liability.

SHIELDS and SULLIVAN, JJ., concur.