**Otto H. LUETH, Jr., and Carolyn M. Lueth, Appellants (Defendants Below),**

v.

**Donald L. GARDNER, and Marianne Gardner, Appellees (Plaintiffs Below).**

No. 50A03–8811–CV–345.

Court of Appeals of Indiana, Third District.

July 19, 1989.

James E. Easterday, Sowinski, Easterday & Ummel, Plymouth, for appellants.

Peter L. Rockaway, Peter L. Rockaway & Associates, Plymouth, for appellees.

STATON, Judge.

Donald and Marianne Gardner (hereinafter referred to as Gardner) sued Otto and Carolyn Lueth (hereinafter referred to as Lueth) in the Marshall Superior Court for breach of contract. Lueth counterclaimed on the same theory. Both parties sought enforcement of the provisions of a non-competition agreement entered in connection with the sale of Gardner's automobile service and repair business to Lueth. Following a bench trial, the trial court entered final judgment in favor of Gardner in the amount of $10,966.66. On appeal, Lueth raises the issue of whether the trial court erred in finding that Gardner had not breached the non-competition agreement?

We affirm.

The facts relevant to this appeal show that in November of 1984, Gardner sold the entirety of his business known as Plymouth Auto Service to Lueth. Pursuant thereto, Gardner entered a non-competition agreement with Lueth which, *inter alia,* provided the following:

Gardner shall not in any fashion, form, manner, either directly or indirectly, compete with or against Lueth in the motor vehicle repair and service business, nor shall Gardner own an interest in, operate, join, continue or participate in or be connected as an officer, employee, agent, independent contractor, partner, shareholder, or principal in, any corporation, partnership, proprietorship, firm or association, or other entity, which directly or indirectly competes with the Plymouth Auto Service within the boundaries and during the term of this Agreement, as set forth below.

(R. 4.)

In consideration for Gardner's promise not to compete within a ten-mile radius within the next three years, Lueth agreed to pay Gardner $10,000.00 over a three year period of equal monthly installments.

Several months after selling Plymouth Auto, Donald Gardner accepted a managerial position at Pilgrim Auto Parts, a NAPA auto parts store (hereinafter referred to as NAPA) located within a ten-mile radius of Plymouth Auto. Marianne Gardner, also subject to the non-competition agreement, accepted a bookkeeping and odd-job position at NAPA. Upon being thus informed, Lueth terminated his installment payments. The litigation here at issue ensued.

As the trial court made specific findings of fact and conclusions of law, we are bound to review the same under the following standard: we first must determine whether the evidence supports the findings; then determine whether the findings support the judgment. *Porter County Board of Zoning Appeals v. Bolde* (1988), Ind.App., 530 N.E.2d 1212, 1215, *reh. denied.* The judgment of the trial court will be affirmed if we conclude that the special findings support the judgment and are not clearly erroneous. *ITT Industrial Credit Company v. R.T.M. Development Company, Inc. et al* (1987), Ind.App., 512 N.E.2d 201, 203. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Porter County, supra.*

Lueth contends that the trial court erred in finding that the Gardners did not breach the non-competition agreement by retaining positions at NAPA. Lueth argues that NAPA competes with services provided by Plymouth Auto, thus rendering the Gardners in violation of that portion of the non-competition agreement which precludes their employment by any firm which directly or indirectly competes with Plymouth Auto.

The trial court found that the services offered by Plymouth Auto and NAPA differed to such an extent that the Gardners were not in breach of the non-competition agreement by accepting work at NAPA. The Gardners testified that NAPA is in the business of selling over-the-counter automobile parts and also does machine shop work on parts removed from vehicles and brought in for repair. Plymouth Auto, at the time of its sale to the Lueths, was in the automobile repair and service business, which involved customers who brought in vehicles in need of repair for diagnosis, servicing and repair. Plymouth was without a machine shop at the time of the sale. However, Lueth had a machine shop installed after purchasing Plymouth and thereafter solicited some machine shop business. When the Gardners sold Plymouth, only $1,800.00 of the $189,985.82 earned in the previous year came from over-the-counter part sales. Further, what over-the-counter parts sales did occur were to Gardner's friends and family members. At no time did the Gardners represent Plymouth Auto as being in the part sales or machine shop business.

The question of whether a breach of contract has occurred is one for the factfinder. *Goff v. Graham* (1974), 159 Ind. App. 324, 306 N.E.2d 758, 765, *reh. denied.* The trial court's findings on this issue are

supported by the evidence and further support the judgment.

In finding that the Gardners had not breached the contract, the trial court determined that it was not the intention of the parties at the time the contract was entered to preclude the Gardners from working as manager or secretary of an auto parts store or machine shop. Lueth argues that the trial court erred in reaching this conclusion because there existed a minor overlap in parts sales and machine shop services between Plymouth and NAPA and, as the non-competition agreement specifically precluded association with any firm which competed directly or indirectly with Plymouth Auto, the trial court was bound to find the Gardners in breach of contract as a matter of law.

The primary purpose of contract law is to effectuate the intentions of the parties thereto. *Piskorowski v. Shell Oil Company* (1980), Ind.App., 403 N.E.2d 838, 844, *trans. denied.* It is presumed that a document contains the parties' intent within its four corners and, where so established, the plain meaning of the provisions will be enforced without the interference of judicial construction. *F.W. Woolworth Co. v. Plaza North, Inc., et al* (1986), Ind.App., 493 N.E.2d 1304, 1306, *trans. denied.* However, where reasonably intelligent minds could find the provisions of a contract susceptible to more than one interpretation, thereby rendering it ambiguous, extrinsic evidence may be heard from which the intentions of the parties can be determined. *Tastee–Freez Leasing Corp. v. Milwid, et al* (1977), 173 Ind.App. 675, 365 N.E.2d 1388, 1390, *trans. denied.* When an ambiguity exists in a contract, the intentions of the parties thereto is a question to be resolved by the factfinder. *Piskorowski, supra.*

The provisions of the contract in this case are ambiguous as to the types of businesses the Gardners were precluded from associating with and whether they were intended to include those which competed in business areas Lueth might venture into in the future or only those Plymouth Auto was in at the time of its sale.

That portion of the agreement which precludes Gardner from competing with Lueth in the motor vehicle repair and service business could be construed as a definition of what constitutes "direct or indirect competition" with Plymouth Auto. As such, the trial court's inquiry into the intentions of the parties was appropriate. The trial court's determination that it was not the parties' intention to preclude the Gardners from working in an auto parts store is supported by the evidence and is in keeping with the requirement that any ambiguity found in a convenant which restricts competition be construed against the convenantee. *See, Young v. Van Zandt* (1983), Ind. App., 449 N.E.2d 300, 303.

Affirmed.

CONOVER, P.J., and HOFFMAN, J., concur.