**TOWN OF CULVER BOARD OF ZONING APPEALS,**
Appellant–Respondent,

v.

**Roderick J. RATCLIFF and Pamela A. Ratcliff, Appellees–Petitioners.**

No. 50A03–1004–MI–179.

Court of Appeals of Indiana.

Oct. 14, 2010.

James N. Clevenger, Wyland, Humphrey, Wagner & Clevenger, LLP, Plymouth, IN, Attorney for Appellant.

James E. Easterday, Easterday & Ummel, Plymouth, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The Town of Culver Board of Zoning Appeals ("the Board") appeals the trial court's judgment in favor of Roderick J. Ratcliff and Pamela A. Ratcliff on the Ratcliff's petition for writ of certiorari from an adverse decision of the Board. The Board raises a single issue for our review, namely, whether the placement of storage sheds on a landscaped gravel lot, and supplied with electricity, constituted the placement of a "structure" with "a fixed location and permanent improvements." We hold that the sheds were not structures within the definition of Culver's zoning ordinances. Accordingly, we affirm the trial court's judgment.

### FACTS AND PROCEDURAL HISTORY

The facts are not disputed. The Ratcliffs own 6.27 acres of real property with-

in Culver's zoning jurisdiction. At some point prior to August of 2008, the Ratcliffs placed five private storage sheds on their land. Those five sheds were constructed off-site and delivered to the property, where they were then placed on skids in an otherwise empty lot with a gravel parking area. The Ratcliffs supplied the sheds with electricity and landscaped the surrounding area.

The Ratcliffs and four of their neighbors used the sheds to store seasonal items they used at a nearby lake during the summer. The Ratcliffs neither charged nor received rent for their neighbors' use of the sheds. The sheds were not available for public use.

In August of 2008, the Ratcliffs were cited for violating Culver Zoning Ordinance Section 5.9 ("Section 5.9"). That ordinance provides, in relevant part, as follows:

Accessory buildings may only be constructed subsequent to the principal use being established and a building permit obtained for the principal building. No accessory building shall be used prior to the principal building or use, except as a storage facility during construction of the principal use. At no time shall it be used for residential purposes.

Appellant's App. at 30. The Ratcliffs did not have a primary building or a permit to build one on the subject property when they placed the sheds there.

After a hearing, the Culver Plan Commission instructed the Ratcliffs to remove the sheds or face fines. The Culver Board of Zoning Appeals affirmed the Plan Commission's decision on appeal. The Ratcliffs then filed a petition for writ of certiorari in the trial court.

On March 10, 2010, the trial court granted the Ratcliffs' petition and entered findings and conclusions in the Ratcliffs' favor. In particular, the court found as follows:

15. The Culver Zoning Ordinance has definitions in Section 1.9 ["Section 1.9"]. The definition of "Building" is as follows:

A structure with walls and roof *securely affixed to the land,* which may be entirely separated on all sides from any other structure ...

16. ... The definition of an "Accessory Building" is as follows:

A subordinate *building or structure* located on the same zoning lot as the principal building or use.

17. ... The definition for "Structure" is as follows:

Any three[-]dimensional object above or below grade *with a fixed location and permanent improvements* made with building materials.

\* \* \*

19. The five storage facilities are clearly shown by the evidence to be five separate facilities with each unit resting on skids on a gravel lot. They are neither securely affixed to the ground nor do they have a fixed location and permanent improvements. According to the definitions with the Culver Zoning Ordinance they are neither "buildings" nor "structures[."]

20. Since the storage facilities are neither "buildings" nor "structures" ... they cannot be "accessory buildings" prohibited by [Section 5.9] and[,] therefore, the decision of the Culver Board of Zoning Appeals to deny the owners' appeal of the Order of the Culver Plan Commission was an abuse of discretion and contrary to law.

*Id.* at 8–9 (emphases added). This appeal ensued.

## DISCUSSION AND DECISION

The Board asserts that the trial court erred in entering judgment in favor of the Ratcliffs.

In reviewing the decision of a zoning board, this Court is bound by the same standard as the trial court. There is a presumption that determinations of a zoning board, as an administrative agency with expertise in the area of zoning problems, are correct and should not be overturned unless they are arbitrary, capricious, or an abuse of discretion. Thus, a reviewing court does not conduct a trial de novo and may not substitute its decision for that of the board. A reviewing court may vacate a board's decision only if the evidence, when viewed as a whole, demonstrates that the conclusions reached by the board are clearly erroneous.

*Van Scoik v. Kosciusko County Bd. of Zoning Appeals,* 598 N.E.2d 594, 595–96 (Ind.Ct.App.1992) (citations omitted), *trans. denied.* However, "if the allegation is that the board committed an error of law, no such deference is afforded and reversal by the trial court is appropriate if error of law is demonstrated." *Town of Beverly Shores v. Bagnall,* 590 N.E.2d 1059, 1061 (Ind.1992). The question in this appeal is the correct interpretation of "structure" in Section 1.9. That is a question of law, and we owe no deference to the Board in addressing that question. *See id.; see also Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n,* 819 N.E.2d 55, 65 (Ind.2004) ("Interpretation of a zoning ordinance is a question of law.").

The basis for the Board's argument on appeal is that the five sheds were "structures" within the definition of Section 1.9

because they were in a fixed location and provided with permanent improvements.[1] As support, the Board identifies the undisputed facts that the Ratcliffs wired the sheds with electricity, provided them with a gravel parking area, and landscaped the area near the sheds. The Ratcliffs respond that "the facilities each rest[ed] on skids on a gravel lot" and, therefore, were neither fixed in location nor permanently improved. Appellee's Br. at 11. We agree with the Ratcliffs.

In *Perkins v. Owens,* 721 N.E.2d 289, 293 (Ind.Ct.App.1999), a statute of frauds case, we considered whether claimants to a parcel of property had demonstrated that the statute of frauds did not apply to their claim because they had made "valuable and permanent" improvements to the disputed property. The allegedly permanent improvements were the building of "a shed upon skids on the disputed property" along with landscaping and bulldozing the area. *Id.* We held that those improvements were "neither permanent in character nor substantial in amount" and, therefore, the claimants were barred in their action by the statute of frauds. *Id.*

Again, to be a structure with the meaning of Section 1.9, the sheds must have "a fixed location and permanent improvements...." Appellant's App. at 34. Neither condition is satisfied here. First, the Board contends that the sheds are in a fixed location because that "definition requires that the objects are in a particular spot." Appellant's Br. at 12. The Board's claim is overbroad and would apply to all personal property. Rather, the only reasonable interpretation of Section 1.9's requirement for a "fixed location" is that the definition applies to appurtenances. An

---

1. The Board does not contest the trial court's conclusion that the sheds were not "buildings" according to Section 1.9.

appurtenance is "something that ... is attached to something else." Black's Law Dictionary 98 (7th ed. 1999). Personal property, on the other hand, is anything movable. *See id.* at 1233.

The sheds here are not attached to anything. They rest on skids that sit on a gravel lot, and they may be moved at any time. That is not a "fixed location" within the meaning of Culver's zoning ordinance.

The sheds also are not permanent improvements to the land and they have not had permanent improvements added to them. *See Perkins,* 721 N.E.2d at 293. Contrary to the Board's claims on appeal, landscaping is not a permanent improvement. *See id.* Bulldozed land is not a permanent improvement, *see id.,* and we are not convinced that adding gravel would convert it into such.

The Board also contends that "[c]onnection to electricity is a permanent improvement." Appellant's Br. at 13. But there is no evidence of the manner in which electricity was provided to the sheds, and the mere connection of electricity to personal property does not, without more, convert the personal property into an appurtenance or a permanent improvement. Further, there is no evidence whether the electrical facilities were permanent or merely temporary.

In sum, the evidence, when viewed as a whole, demonstrates that the conclusion reached by the Board was clearly erroneous. The Board erred as a matter of law when it interpreted "structure" under Section 1.9 to apply to the sheds, which are personal property. And the Board's conclusion that sheds on skids, landscaping, and/or a cleared area are permanent improvements is also contrary to law. *See Perkins,* 721 N.E.2d at 293. Because the sheds are not structures, they cannot be "accessory buildings" under Section 5.9, and the Board's application of that section

against the Ratcliffs is clearly erroneous. Accordingly, the trial court properly entered judgment for the Ratcliffs, and we affirm the trial court's judgment.

Affirmed.

BAKER, C.J., and MATHIAS, J., concur.